UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
                               :

                               :

                               :   08 Civ. 6666 (LBS) (KNF)

                               :

IN RE MILOS LITIGATION          :

                               :

                               :   ECF Case

                               :

                               :

-----------------------------------------------------------x

### DECLARATION OF D. MAIMON KIRSCHENBAUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, D. Maimon Kirschenbaum, an attorney duly admitted to practice in the Southern

District of New York, declare under penalty of perjury:

1.      I am a partner with Joseph, Herzfeld, Hester & Kirschenbaum LLP ("JHHK")

and, together with Louis Pechman of Berke-Weiss & Pechman LLP ("BWP"), am Class Counsel

in the above-referenced case.  This declaration is made in support of Plaintiffs' Motion for Final

Approval of Settlement pursuant to Federal Rule of Civil Procedure Rule 23.  I am personally

familiar with the facts discussed herein and attach as exhibits hereto true and correct copies of

the documents referenced within.

### PROCEDURAL HISTORY

2.      On July 28, 2008, plaintiffs Franco Sukaj and Nikolaos Tsikitas filed *Sukaj et al.*

*v. Milos, Inc. et al.*, No. 08 Civ. 6666 in the Southern District of New York.  On August 5, 2008,

plaintiff Rouly Charalabidis filed *Charalabidis v. Milos, Inc. et al.*, No. 08 Civ. 6973 with this

Court.  Both cases alleged that defendants violated the Fair Labor Standards Act ("FLSA") and

New York Labor Law ("NYLL") by paying Class Members pursuant to state and federal tip

3.      During discovery, Class Counsel deposed the Costas Spiliadis, the individual named defendant and an owner of Milos restaurant ("Milos"); David Dangoor, another Milos owner; and two Milos managers, Maite Arguelles and Marios Zeniou.

4.      Class Counsel also defended the depositions of Noumeir Bermeo, Rouly Charalabidis, Rodrigo Collaguazo, Nurul Islam, Jose Onofre, Franco Sukaj, and Nikolaos Tsikitas.

5.      Class Counsel reviewed several thousand pages of documents produced by defendants, interviewed over fifty Class Members, and contacted several third party witnesses in order to fully evaluate the claims in this action.

6.      On January 11, 2010, the Court conditionally certified the FLSA portion of this case as a collective action and the state law claims as a class action pursuant to Rule 23.

7.      Plaintiffs filed their motion for partial summary judgment on March 15, 2011.

8.      When this case settled in May 2011, the Parties had engaged in full discovery and were preparing for trial, and plaintiffs' partial summary judgment motion was still pending.

## SETTLEMENT NEGOTIATIONS

9.      The Parties engaged in extensive direct settlement discussions during discovery and shortly thereafter, and it took close to three years from the commencement of settlement talks until a settlement was finally reached.

10.      The Parties attended a settlement conference before Magistrate Judge Fox on February 24, 2009.   This conference was unsuccessful.

11.      On April 6, 2011, the parties reached a settlement in principle.

## THE SETTLEMENT AGREEMENT

12.     On May 20, 2011, Parties signed a Joint Settlement Stipulation of Settlement and

Release.  On June 6, 2011, the Court preliminarily approved the proposed settlement.

13.     The Settlement between the parties totals $1,975,000.00. This amount includes

attorneys' fees and costs, any service fees, and the fees of Garden City Group ("Claims

Administrator"), which will be administering the settlement.

14.     The Settlement funds (less attorneys' fees and costs, administrative fees, and

service fees) will be distributed as follows:

> a.  Each person who timely submitted a consent to sue form ("opt-in plaintiff")
>     will receive his or her full tip credit damages for the period between July 28,
>     2005 and May 20, 2011 plus an equal amount as liquidated damages.
>
> b.  After tip credit damages and liquidated damages are subtracted from the NSF,
>     the remaining amount of the NSF will be distributed among all Class
>     Members (including opt-in plaintiffs) on a *pro rata* basis determined by their
>     last held position and hours worked.  Because defendants changed their
>     practices by January 2009, hours worked before January 2009 are weighted
>     more heavily than hours worked after January 2009

15.     Pursuant to the Court's June 6, 2011 Order, Garden City Group ("Claims

Administrator"), the third-party settlement administrator in this action, mailed the Court-

approved notice of settlement ("Notice") and cover letter via first class mail to all Class

Members at their last known addresses.  For all Class Notices returned as undeliverable, the

Claims Administrator made all reasonable efforts to obtain correct addresses and attempted up to

two re-mailings per Class Member.

16.     No Class Members have objected to or opted out of the settlement.

17.     This settlement compares favorably to other recent settlements in wage and hour

cases brought against comparable New York City restaurants.  Here, the average individual

settlement award is approximately $6,100 (less attorneys' fees and administrative fees).

**ATTORNEYS' FEES**

18.     JHHK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

19.     I manage the firm's food service wage and hour department.

20.     Since graduating Fordham University School of Law in 2005, I have worked at JHHK.  As a result of my accomplishments representing food service workers throughout New York City, detailed below, I became a member/partner of the firm in May of 2007.

21.     Over 90% of my personal current docket involves class actions lawsuits against New York City restaurants for wage and hour violations.

22.     I have been approved numerous times as lead or co-lead counsel pursuant to Rule 23.

23.     Denise Schulman received her J.D. from New York University School of Law in 2008 and joined JHHK in January 2009.

24.     The majority of Ms. Schulman's current docket involves wage and hour class action lawsuits.  Ms. Schulman serves with me as co-lead counsel on several cases that have been certified as collective and/or class actions.

25.     Matthew Kadushin received his JD from New York University School of Law in 2000.  He worked as a public defender in Washington, DC and New York City for approximately 9 years before joining JHHK in or around October 2009.  The majority of Mr. Kadushin's current docket involves wage and hour class action lawsuits

26.     Michael Palmer has an associate been with Joseph & Herzfeld since receiving his JD from New York University School of Law in 2004.  Throughout that time, Mr. Palmer's

practice has focused almost exclusively on employment discrimination and wage/hour cases.  He

have acted as lead or co-lead counsel in numerous cases, including class actions.

27.     Over the last several years, JHHK's wage and hour practice has filed over 50

class/collective actions on behalf of people employed in the New York food service industry, in

addition to a significant number of individual actions.

28.     We have been appointed lead or co-lead class counsel (or counsel for

representative plaintiffs in FLSA collective actions) in actions in federal and state courts,

including *Spicer v. Pier Sixty LLC*, 2010 U.S. Dist. LEXIS 76782 (S.D.N.Y. July 26, 2010)

(granting Fed. R. Civ. P. 23 class certification and conditional collective certification pursuant to

the FLSA); *Kato v. Masa NY*, Index No. 09-104578 (S. Ct., N.Y. County Jan. 28, 2010)

(certifying class and appointing JHHK class counsel); *Delaney v. Geisha NYC, LLC*, 261 F.R.D.

55 (S.D.N.Y. 2009) (conditionally certifying FLSA collective action); *Agofonova v. Nobu Corp.*,

No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification

of settlement class in wage and hour class action); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-

3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective

action); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007)

(conditionally certifying FLSA collective action).

29.     As a result of these lawsuits, we have recovered over $14 million for thousands of

New York food service workers.  *E.g.*, *Bricker v. Planet Hollywood N.Y., L.P.*, No. 08 Civ. 443,

2009 U.S. Dist. LEXIS 76613 (S.D.N.Y. Aug. 13, 2009) (granting final approval of settlement

and certification of settlement class in wage and hour class action); *Agofonova v. Nobu Corp.*,

No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification

of settlement class in wage and hour class action).  In addition, we have increased awareness of

wage and hour laws throughout the New York City restaurant industry.  Our work has attracted significant media attention and contributed greatly to a city-wide movement on behalf of food service employees.

30.     Louis Pechman is a partner in the firm BWP.  BWP is a law firm that represents both employees and management in a wide variety of employment law issues, including, *inter alia*, claims of discrimination and harassment based on sex, race, disability, or age; retaliation; First Amendment retaliation; wage and hour claims; and claims concerning union-management issues.

31.     Since graduating from Fordham Law School 27 years ago, Mr. Pechman has specialized in labor and employment law.  Before co-founding BWP with Laurie Berke-Weiss in 1996, he was an attorney at three New York law firms: Skadden, Arps, Slate, Meagher & Flom LLP, Vladeck, Waldman, Elias & Engelhard, P.C., and Lambos & Giardino.  Mr. Pechman also worked as in-house labor counsel at the *Daily News* and as a Field Examiner with the National Labor Relations Board.

32.     Mr. Pechman has been active in the labor and employment committees in various bar associations, and since 1996 has moderated a program at the New York County Lawyers' Association on "Handling Employment Discrimination Cases."  In 2010, and again this year, Mr. Pechman moderated a program at New York County Lawyers' Association on "How to Handle a Wage and Hour Case."

33.     Jessica Tischler received her J.D. degree from Benjamin N. Cardozo School of Law in June 2007.  She has worked at BWP as an associate attorney since January 2008, and has been involved in more than a dozen wage and hour cases.

34.     Since its founding in 1996, BWP has focused its practice on labor and employment law.  Mr. Pechman has handled such cases from intake to settlement, motion practice, and trying them to conclusion.  BWP is "A-V" rated by Martindale-Hubbell, and Mr. Pechman has been selected by his peers for inclusion in *The Best Lawyers in America* and in *New York Super Lawyers* since 2006.

35.     Over the past five years, Mr. Pechman has filed several class and collective actions on behalf of workers employed in the New York restaurant industry, in addition to a number of individual actions.  *See*, *e.g.*, *Duchene v. Michael Cetta, Inc. d/b/a Sparks Steak House*, No. 06 Civ. 4576 (PAC), 2007 U.S. Dist. LEXIS 44984 (S.D.N.Y. June 18, 2007) (certifying case as FLSA collective action and Rule 23 class action and appointing BWP as class counsel); *Dumitrescu v. Mr. Chow Enters., Ltd.*, No. 07 Civ. 3601 (PKL), 2008 U.S. Dist. LEXIS 49881 (S.D.N.Y. June 30, 2008) (authorizing case to proceed as FLSA collective action); *Khalil v. Original Homestead Rest., Inc.*, No. 07 Civ. 695 (RJH), 2007 U.S. Dist. LEXIS 70372 (S.D.N.Y. Aug. 9, 2007) (conditionally certifying FLSA collective action of restaurant workers).

36.     Based on JHHK's and BWP's extensive experience in precisely this type of litigation and our thorough familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed Settlement is clearly in the best interests of the named plaintiffs and the Class

37.     JHHK and BWP have spent significant attorney and paralegal time litigating this case.

38.     Through August 31, 2009, JHHK and BWP has spent more than 1,096 hours over three years and three months litigating and settling this case, which includes more than 960 attorney hours and 136 paralegal and intern hours.  Many plaintiffs even had my cell phone

number for after-hours access to accommodate their schedules and keep them informed.  We

anticipate expending more hours after the date of this motion in appearing at the Fairness

Hearing and administering the Settlement, which we expect will require a substantial

commitment of time.  For example, many of the Rule 23 Class Members who have received

notice have had questions regarding the settlement.  In fact, since the Notice was sent out to the

Rule 23 Class Members, JHHK and BWP have expended dozens of hours responding to

questions about the case and will continue to do so as the settlement administration continues.

39.     The hours reported are reasonable for a case of this complexity and magnitude

and were compiled from contemporaneous time records maintained by each attorney and

paralegal participating in the case.

40.     Below is a chart summarizing the specific attorneys, their hourly rates, and their

total time worked on this matter, in addition to the total paralegal time for time spent by JHHK

and BWP on this matter.

| Individual | Rate | Total Hours | Total |
|---|---|---|---|
| Louis Pechman | $500 | 532 | $266,000 |
| D. Maimon Kirschenbaum | $450 | 179.8 | $80,910 |
| Matthew Kadushin | $425 | 5.9 | $2,507.50 |
| Michael Palmer | $350 | 6.3 | $2,205 |
| Denise A. Schulman | $300 | 63.9 | $19,170 |
| Jessica Tischler | $250 | 173 | $43,250 |
| Paralegals | $125 | 136.2 | $17,019 |
| | | **Total:** | **$431,061.50** |

41.      JHHK and BWP incurred the following costs in litigating this case:

| Description of cost | Total costs |
|---|---|
| Filing fees | $700 |
| Service of process | $155 |
| Deposition expenses and witness fees | $5,673.69 |
| Postage and delivery services | $242.88 |
| Printing and reproduction costs | $420.60 |
| Electronic research | $238.30 |
| **Total:** | **$7,430.47** |

42.      JHHK's and BWP's request for 33 1/3% of the Settlement Fund, or

$658,333.33, is approximately 1.53 times the lodestar, far less than what Courts have awarded in

similar cases.

43.      JHHK and BWP undertook to prosecute this action without an assurance of

payment for their services, litigating this case on a wholly contingent basis in the face of

tremendous risk.  Large-scale wage and hour cases of this type are, by their very nature,

complicated and time-consuming.  Attorneys undertaking representation of large numbers of

affected employees in wage and hour actions inevitably must be prepared to make a tremendous

investment of time, energy, and resources.  Due also to the contingent nature of the customary

fee arrangement, attorneys are asked to be prepared to make this investment with the very real

possibility of an unsuccessful outcome and no fee of any kind.  Indeed, the facts and

circumstances of this case presented numerous and substantial hurdles to a successful recovery

of unpaid wages.  JHHK and BWP stood to gain nothing in the event the case was unsuccessful.

44.      To date, JHHK and BWP have worked without compensation of any kind, and the

fee has been wholly contingent upon the result achieved.

45.      No Class Member has raised objections to JHHK's and BWP's attorneys' fees as

set forth in the Notice of Settlement.

## SERVICE FEES

46.     Class Representative Rouly Charalabidis and plaintiffs Noumeir Bermeo, Jose

Onofre, Nurul Islam, Rodrigo Collaguazo, Franco Sukaj, and Nikolaos Tsikitas were

instrumental to the initiation and prosecution of this action.  They each expended considerable

time and effort to assist Class Counsel with the case, and each of them assisted in discovery and

were deposed by defendants.

47.     They reviewed documents, explained the relevant and necessary factual

information to Class Counsel, evaluated defendants' defenses, and identified potential witnesses.

48.     Given the close-knit nature of the New York City restaurant community and the

fact that lawsuits such as these attract a fair amount of publicity, Charalabidis, Bermeo, Onofre,

Islam, Collaguazo, Sukaj, and Tsikitas faced the inherent risk of being "black balled" in the

industry for the sake of the Class.

49.     Charalabidis has dedicated many hours of his time to ensuring the success of this

case, by communicating with other potential plaintiffs and Rule 23 Class Members, assisting in

fact-gathering, and reviewing court filings for completeness and factual accuracy. Charalabidis

also attended depositions of defendants' representatives, and was himself deposed by defendants.

50.     Class Counsel has had a multitude of telephone calls and face to face meetings

with Charalabidis, who often served as an intermediary with Milos' waitstaff who had questions

about the Lawsuit.  He reviewed pleadings and affidavits and other court submissions for

accuracy and feedback from the perspective of the Class.

51.     No Class Member has raised objections to the service fees to Charalabidis or

plaintiffs Bermeo, Onofre, Islam, Collaguazo, Sukaj, and Tsikitas, as set forth in the Notice of

Settlement.

**CLAIMS ADMINISTRATOR'S FEES**

52.      As set forth above, the Claims Administrator has already mailed the Notice to all

Class Members.  Its ongoing administrative duties include, *inter alia*, mailing settlement checks,

updating Class Members' addresses, reissuing checks, and handling tax reporting.

53.      The Claims Administrator's total fees in administering the settlement are

estimated not to exceed $25,000.  However, the Claims Administrator's precise fees cannot yet

be determined, as it will do substantial additional work after settlement approval.

**EXHIBITS**

54.      Attached hereto as Exhibit 1 is a true and correct copy of the Settlement

Agreement in this action.

55.      Attached hereto as Exhibit 2 is a true and correct copy of the Notice and cover

letter sent to Class Members in this action.

56.      Attached hereto as Exhibit 3 is a proposed Order.

57.      Attached hereto as Exhibit 4 is a true and correct copy of the transcript of a

fairness hearing before Judge Batts in *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y.

Feb. 6, 2009).

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and

correct.

Dated: New York, New York
         September 1, 2011

                                        /s/ D. Maimon Kirschenbaum
                                        D. Maimon Kirschenbaum